DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Stanley Jalowiec appeals from his conviction on one count of aggravated murder with specifications and his sentence of death. We affirm.
On June 7, 1993, Ronald Lally, an informant for the Elyria Police Department, purchased crack cocaine from Raymond Smith and Danny Smith, Raymond's son. At the time, Lally was wired by the police, and three officers listened to and taped the drug buy. As a result, both Raymond and Danny were arrested and charged with aggravated drug trafficking. Raymond and Danny were to be tried on the drug charges on January 19, 1994.[1]
On September 15, 1993, Patrolman John Homoki of the Elyria Police Department responded to a disturbance call outside a fast-food restaurant. As Patrolman Homoki approached in his vehicle, he saw Jalowiec walking away from the area and Danny Smith in front of the restaurant door. Homoki exited his vehicle, and Ron Lally, who was an acquaintance of Homoki, hurried toward the police car. Lally was very agitated and told Homoki, "John, these guys are going to f* * * me up." Lally indicated that Jalowiec and Danny had threatened his life. At that point, Jalowiec was standing across the street from the restaurant.
The night of January 18-19, 1994, was one of the coldest nights on record in northeast Ohio. The evening of January 18, the day before the Smiths' drug trial, Jalowiec and an acquaintance, Brian Howington, went to Lally's apartment and smoked crack cocaine with Lally and Lally's roommate. After an hour or two, Howington, Lally, and Jalowiec drove to the house of Howington's aunt, Joann Fike, who was also known as "Queen Bee." Once there, Howington, Lally and Jalowiec smoked more crack cocaine and played pool. At some point after 1 a.m., Jalowiec told Howington that he was going to borrow Fike's car. Howington testified at trial that he believed Jalowiec said this after receiving a page on his pager. Howington initially resisted, but later he relented. Lally left with Jalowiec in Fike's car.
That same night, Raymond and Danny were out drinking with several friends and with Michael Smith, another son of Raymond. After the bar where the group was drinking closed at 2:30 a.m., the group went to a restaurant across the street to eat. During the meal, Raymond made a phone call. Thereafter, Raymond indicated to the others that it was time to leave. Raymond, Danny, Michael, and Danny's girlfriend left in Danny's car.
Danny drove the car to South Middle Avenue in Elyria. Raymond got out of the car and told Michael to accompany him. Michael asked what they were waiting for, and Raymond responded, "A ride," and "Just look for Queen Bee's car." A while later, Jalowiec arrived in Fike's car with Lally. Raymond and Michael entered the car, and the four drove off.
Once inside the car Jalowiec was driving, Raymond introduced Michael to Lally, then pulled out a gun and told Lally not to move. Jalowiec drove the car to a Speedway gas station. Raymond exited the car and purchased some beer and cigarettes and put gas in the car. Lally made no attempt to leave. Raymond re-entered the car, and they drove off. At that point, Raymond asked Lally, "Why did you set my son up[?]" Lally denied that he had set up Danny and Raymond. After a while, Raymond told Lally that they were going to put Lally on a bus and send him out of town so that he could not testify at Danny's trial. Lally agreed. The four then began drinking the beer and smoking crack cocaine as Jalowiec continued to drive toward Cleveland.
When they arrived in Cleveland, Raymond asked where they could purchase more crack cocaine for Lally to take on his trip. Michael told him to go to East Cleveland. However, as the car headed in that direction, they encountered police and fire trucks, so Jalowiec drove toward downtown Cleveland again. Raymond then directed Jalowiec where to drive. Eventually, they ended up in a cemetery in Woodland.
Raymond got out of the car, put the gun in Lally's face, and ordered Lally to get out of the car. Lally complied. Raymond then said, "You will never snitch on nobody again." Michael testified that he heard a gun shot, followed by Lally saying, "You shot me in my head, you shot me in my head." Raymond then told the others in the car to get out and help him. Jalowiec left the car; Michael dropped his head and remained in the car. Michael testified that he heard "thumps like hitting" and that he heard Lally saying that he would not tell anyone and begging that they not kill him. Raymond asked Jalowiec if he had a knife, and Jalowiec responded that he did not. Jalowiec then returned to the car and removed something. Michael testified that there was silence for a period of two to five minutes, followed by someone opening the trunk. Michael felt the car move as if Raymond and Jalowiec were trying to put something in the trunk and heard them say words to the effect of "He ain't going to fit, he ain't going to fit, he is too stiff." Michael then heard something drop to the ground.
Raymond and Jalowiec re-entered the car, with Jalowiec assuming the driver's seat. Jalowiec then put the car into drive, moved forward a short distance, and put the car in reverse. The car's movement was stopped by what Michael surmised to be Lally's body. Jalowiec repeated this two more times. Jalowiec then drove the car away. As they drove, Raymond chastised Michael for not helping with the killing and also took the gun apart, throwing a piece of the gun out the car window about every couple of miles.
When the three returned to Elyria, Jalowiec and Raymond dropped off Michael at Danny's house. Raymond and Jalowiec returned Fike's car at about 5 a.m. It was covered with ice, as if it had been washed on that cold night. When Fike inspected the car, she found blood on it. She asked Jalowiec to explain, and he said that he had been in a fight with someone that night in Elyria.
Lally's body was discovered at approximately 10 a.m. on January 19, 1994. Officers from the Cleveland Police Department investigated the scene, collected evidence (including a large knife), and transported Lally's body to the Cuyahoga County Coroner's Office. Through the testimony of police officers, a forensic pathologist, and a forensic serologist, it was established that Lally's head was struck at least eleven times, that his throat was slashed superficially, and that he had been shot in the head, with the bullet splitting his tongue and lodging against Lally's spinal column. Lally had numerous lacerations and scrapes all over his body, and his lips were split. The causes of death were established as the blows Lally received and exposure to the extreme cold of that night. The time of death was placed between 2:30 a.m. and 8:30 a.m. Tests also showed that Lally had traces of crack cocaine in his system, but no signs of alcohol.
After a lengthy investigation, Jalowiec was indicted by the Lorain County Grand Jury on March 8, 1995. Jalowiec was indicted on one count of aggravated murder for the death of Lally. Two specifications accompanied the aggravated murder charge: the first was a firearm specification; the second was a specification that Jalowiec killed Lally to prevent Lally from testifying in a criminal proceeding. Jalowiec pleaded not guilty to the aggravated murder charge and the specifications.
The case was tried before a jury in the Lorain County Court of Common Pleas. Voir dire began on March 12, 1996, and a jury of twelve with two alternates was seated on March 13, 1996. Opening statements in the guilt phase of Jalowiec's trial began March 14, 1996, with the prosecution beginning its case-in-chief that same day. The case was submitted to the jury on March 19, 1996. On March 20, 1996, the jury found Jalowiec guilty of aggravated murder and also found both specifications.
The penalty phase of Jalowiec's trial was held on April 9 and 10, 1996. The prosecution incorporated its evidence from the guilt phase on the issue of the sole aggravating circumstance: the killing of Lally to prevent him from testifying in a criminal proceeding. Jalowiec presented evidence on the mitigating factors, and the prosecution presented evidence in rebuttal. After deliberating, the jury recommended the death sentence. The trial court confirmed the sentence of death. Jalowiec now appeals to this court.
Jalowiec asserts thirteen assignments of error. We review each in due course.
 I. Jury Issues First Assignment of Error The trial court abused its discretion by dismissing for causeprospective jurors who could fairly consider the possibilityof death and failing to dismiss for cause a juror for deathwhose views in favor of the death penalty precluded fairconsideration of life options.
Jalowiec's first assignment of error deals with three potential jurors, and their exclusion from or retention in the panel by the trial court. The potential jurors involved were Mrs. Porter, Mr. Eubanks, and Mrs. Kulcsar.
Potential jurors Porter and Eubanks were excused by the trial court after voir dire on the issue of the jurors' views on the death penalty. Both expressed some hesitancy in being able to vote for imposition of the death penalty if the law and facts of Jalowiec's case warranted such penalty. Jalowiec argues that the trial court erred by excusing them from the panel.
We note that no objection was raised to the trial court's decision. Therefore, we can only take notice of the error if it rises to the level of plain error. Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order for this court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. See State v. Lane (1995), 108 Ohio App.3d 477, 482.
We conclude that the exclusion of potential jurors Porter and Eubanks does not rise to the level of plain error. "The proper standard for determining when a prospective juror may be excluded for cause based on his views on capital punishment is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath." State v. Rogers (1985), 17 Ohio St.3d 174, paragraph three of the syllabus, vacated and remanded on other grounds (1985), 474 U.S. 1002, 88 L.Ed.2d 452. In reviewing the trial court's decision, we view the voir dire in its entirety.State v. Landrum (1990), 53 Ohio St.3d 107, 118.
When questioned about her feelings on the death penalty, prospective juror Porter initially stated that she was opposed to the imposition of the death penalty and could not consider it as an option. After Porter was rehabilitated by counsel for Jalowiec, she began to state that she could consider the death penalty. However, Porter's comments showed that she could not impose the death penalty if the law required such.[2] Viewing her voir dire as a whole, we conclude that the trial court did not err by excluding potential juror Porter from the jury.
Potential juror Eubanks also was questioned on the issue of the death penalty and indicated that he could consider it along with the other two possible sentences, life with a minimum thirty year sentence, and life with a minimum twenty year sentence. However, when the prosecutor asked him about whether he could sign his name to a piece of paper that would call for the death penalty to be imposed on Jalowiec, Eubanks vacillated, responding with "I don't know, I better not say yes," and "I thought I could, but I have that little doubt in the back of my mind." His responses to this line of questioning demonstrated that he would be unable to impose the death penalty if required. Again, viewing Eubanks' voir dire as a whole, we find the trial court did not err.
Jalowiec also argues that the trial court improperly refused to dismiss for cause potential juror Kulcsar. At voir dire, Kulcsar's answers to questions regarding her views on capital punishment and law enforcement showed a tendency to favor the State and disfavor criminal defendants.[3] When asked if her views would influence her individual determination as to guilt or innocence or as to the death penalty, Kulcsar answered, "Maybe yes, maybe no." Counsel for Jalowiec challenged Kulcsar for cause; the trial court denied the request and retained Kulcsar on the panel. Jalowiec eventually exercised his first peremptory challenge to remove Kulcsar from the panel.
Even assuming arguendo that potential juror Kulcsar should have been dismissed for cause, Jalowiec's argument lacks merit. Kulcsar never sat on the jury, but was removed by Jalowiec through the use of a peremptory challenge. "So long as the jury that sits
is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." Ross v. Oklahoma (1988), 487 U.S. 81, 88,101 L.Ed.2d 80, 90. (Emphasis added.) Accord State v. Broom (1988),40 Ohio St.3d 277, 287-88; State v. Williams (Nov. 1, 1995), Summit App. No. 16418, unreported, at 11, affirmed (1997), 79 Ohio St.3d 1. Because Kulcsar did not sit on the jury, and Jalowiec does not contend that any jurors who actually sat were not impartial, Jalowiec was not prejudiced by the trial court's failure to exclude Kulcsar for cause.
The exclusion of potential jurors Porter and Eubanks by the trial court was not error. Jalowiec was not prejudiced by the trial court's refusal to exclude potential juror Kulcsar for cause. Jalowiec's first assignment of error is overruled.
 II. Motion for Acquittal Second Assignment of Error The trial court erred by failing to grant appellant's motionfor judgment of acquittal under Ohio Rule of CriminalProcedure 29, in that the evidence presented by the State ofOhio was insufficient to sustain a conviction for the offenseof aggravated murder, in violation of appellant's rightsunder the Fifth, Sixth, Eighth and Fourteenth Amendments tothe U.S. Constitution and Article I, Sections 10 16 of theOhio Constitution.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus. In making this determination, all evidence must be construed in a light most favorable to the prosecution. State v. Williams (1996), 74 Ohio St.3d 569,576.
R.C. 2903.01(A) states: "No person shall purposely, and with prior calculation and design, cause the death of another." Jalowiec argues that two material elements were not proven beyond a reasonable doubt: prior calculation and design, and venue.
 A. Prior Calculation and Design
"Prior calculation and design" requires more than instantaneous or momentary deliberation. State v. Cotton (1978),56 Ohio St.2d 8, paragraph two of the syllabus.
 Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified.
Id. at paragraph three of the syllabus. No bright-line test exists to show the presence or lack of "prior calculation and design." State v. Taylor (1997), 78 Ohio St.3d 15, 20. Each case must be resolved on its own facts. Id.
In the case at bar, the evidence showed that Jalowiec's involvement was more than an instantaneous reaction or an action taken on the spur of the moment. On September 13, 1993, Lally told Patrolman Homoki that Jalowiec and Danny were going to get Lally and that they had threatened his life. On the night of the murder, Jalowiec, Lally, and Howington smoked crack cocaine and played pool at the house of Howington's aunt for some time. After he received a page, Jalowiec borrowed the car of Howington's aunt, who was known as "Queen Bee," and took Lally with him. Before Raymond left the restaurant in Danny's car with Danny and Michael, Raymond made a phone call. After making the call, Raymond told Danny and Michael that they were leaving. After arriving at a certain spot outside Elyria, Raymond and Michael stood waiting for the car of "Queen Bee." When the car arrived, Jalowiec was driving, and Lally was a passenger. Raymond and Michael entered the car. Jalowiec then got on the freeway and eventually drove to the cemetery where Lally was killed.
Viewing the evidence in a light most favorable to the prosecution, we conclude that Jalowiec had sufficient time and opportunity to participate in a plan to kill Lally, and that the circumstances showed a scheme to kill Lally. The trial court properly overruled the motion for acquittal on the element of prior calculation and design.
 B. Venue
Venue is not a material element of any crime, but is a fact that must be proven beyond a reasonable doubt. State v. Headley
(1983), 6 Ohio St.3d 475, 477. Venue may be established by all the facts and circumstances in a case. Id. Venue is proper in the jurisdiction, i.e., county, where an offense, or any element thereof, is committed. Id. at paragraph one of the syllabus. "When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any such jurisdiction." R.C. 2901.12(G).
Jalowiec argues that venue was not proven beyond a reasonable doubt. He contends that all elements of the crime of aggravated murder took place in Cuyahoga County, where Lally's body was found. Because Raymond stated that they were going to put Lally on a bus, and any deviation from that plan did not occur until the car was in Cleveland, Jalowiec asserts that no element of the crime occurred in Lorain County.
The trial court did not err in overruling Jalowiec's motion for acquittal on the issue of venue. As demonstrated above, the facts from which the jury could have inferred prior calculation and design on the part of Jalowiec occurred in Lorain County. Even if that were not the case, venue would still be proper in Lorain County because it could not be reasonably determined whether the element of prior calculation and design occurred in Lorain County or Cuyahoga County. This is a situation clearly covered by R.C. 2901.12(G). See State v. Miller (1989), 63 Ohio App.3d 479,484-85. Viewing the evidence in a light most favorable to the prosecution, venue was properly established in Lorain County.
 C. Summary
The trial court properly overruled Jalowiec's motion for acquittal. Jalowiec's second assignment of error is overruled.
 III. Evidentiary Issues A. Hearsay Testimony Third Assignment of Error The allowance of testimony as to out-of-court statementsattributed to danny smith [sic] over defense counsels'objection was prejudicial error and deprived appellant of hisrights under the Fifth, Sixth, Eighth andFourteenth amendments [sic] to the U.S. Constitution and Article I,Sections 10 and 16 of the Ohio Constitution.
In his third assignment of error, Jalowiec contends that certain testimony containing statements made by Danny were hearsay and were improperly admitted. One of these statements was in Patrolman Homoki's testimony. After Homoki spoke with Lally, he approached Danny, who said, "That snitch will get his." Other statements came from other prosecution witnesses, who testified that Danny had either threatened Lally, solicited someone else's help in killing Lally, or admitted to killing Lally. The State contends that these statements fall within the co-conspirator exception to the hearsay rule, Evid.R. 801(D)(2)(e).
Regardless of whether the alleged hearsay statements were properly admitted under the co-conspirator exception, any error was harmless. "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Accordingly, "[w]here constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." State v.Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus. "Error in admitting hearsay does not justify reversal where it is harmless." State v. Carter (1995), 72 Ohio St.3d 545, 550. As we noted above, none of the alleged hearsay testimony would have been required to meet the "prior calculation and design" element of aggravated murder. The evidence also showed that Jalowiec drove Fike's car to the cemetery, got out of the car to help Raymond kill Lally, retrieved something from the car to slash Lally's throat, and then attempted to run over Lally's body with the car three times. Thus, overwhelming evidence of Jalowiec's guilt is found without resort to the alleged hearsay statements. Jalowiec's third assignment of error is overruled.
 B. Admission of Photographs as Evidence Eighth Assignment of Error The gruesome coroner's photographs are unfairly prejudicialwhere they are solely used to inflame the passion of thejury.
Jalowiec's eighth assignment of error attacks the introduction of gruesome photographs into evidence. The prosecution introduced into evidence twenty-eight photographs taken of Lally's body during the autopsy. Jalowiec argues that the photographs were repetitive and cumulative, and that the photographs would have inflamed the jury.
"[T]he mere fact that a photograph is gruesome or horrendous is not sufficient to render it per se inadmissible." State v.Maurer (1984), 15 Ohio St.3d 239, 265.
 Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number.
Id. at paragraph seven of the syllabus. So long as the photographs admitted into evidence are not repetitive or cumulative and the probative value of each photograph outweighs its prejudicial impact, the trial court's discretion in admitting the photographs will not be disturbed. State v. Morales (1987),32 Ohio St.3d 252, 258.
We find no error in admitting the photographs of Lally's body. Though several are quite gruesome, each is demonstrative of the testimony of the forensic pathologist who performed Lally's autopsy as to the manner in which Lally died. See State v. Biros
(1997), 78 Ohio St.3d 426, 444-45. See, also, State v. Phillips
(1995), 74 Ohio St.3d 72, 77-79. Each photograph displays some feature that is not cumulative of the others. Their probative value outweighs any prejudicial effect. Jalowiec's eighth assignment of error is overruled.
 IV. Other Guilt Phase Issues A. Improper Comments by Trial Court Fourth Assignment of Error The trial court deprived appellant of his right to a fairtrial by improperly admonishing, criticizing and/orcorrecting defense counsel in front of the jury, deprivingappellant of his rights under the Fifth, Sixth, Eighth andFourteenth Amendments to the U.S. Constitution.
Jalowiec contends in his fourth assignment of error that the trial court made prejudicial remarks. There are five instances that Jalowiec argues deprived him of his right to a fair trial.
The standard for determining whether the trial court's comments were prejudicial was set forth in State v. Wade (1978),53 Ohio St.2d 182, vacated and remanded on other grounds (1978),438 U.S. 911, 57 L.Ed.2d 1157:
 (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel.
Id. at 188. In addition, the defendant must object to the comments, in order to give the judge an opportunity to correct the error by curative instruction or otherwise. Id. The failure to object waives all but plain error. See id.
In the case at bar, Jalowiec entered no objection to any of the trial court's comments. Upon reviewing the comments in the context in which they were made, we find no plain error. Furthermore, Jalowiec has not demonstrated how the comments prejudiced his right to a fair trial. Jalowiec's fourth assignment of error is overruled.
 B. Prosecutorial Misconduct Fifth Assignment of Error The prosecutor improperly commented on the appellant'sFifth Amendment protections.
In his fifth assignment of error, Jalowiec takes issue with comments made by the prosecution in its closing argument. The following occurred during the prosecution's closing argument:
 [Mr. Rosenbaum, the prosecutor]: Well, you have heard evidence put on by the State that is uncontradicted. There was no evidence called refuting what the State said —
MR. GRUNDA [co-counsel for Jalowiec]: Objection.
 MR. ROSENBAUM: (Continuing) — or produced as evidence.
MR. GRUNDA: We don't have to do that.
 THE COURT: And you may say that in your closing, Mr. Grunda.
 MR. ROSENBAUM: And he doesn't have to. He is right. He chose not to, so you are bound by the evidence the State gave you unless they can persuade you that the State's people should not be believed and I anticipate that that is exactly what is going to happen.
Jalowiec argues that these comments amount to the prosecutor improperly commenting on his Fifth Amendment right not to testify on his own behalf.
Jalowiec's argument lacks merit. "[S]tatements made by the prosecutor to the effect that the evidence against appellant was uncontradicted and unrefuted does not constitute a comment by the prosecutor upon the failure of the defendant to testify, prejudicial to appellant's right to a fair trial." State v.Lockett (1976), 49 Ohio St.2d 48, 65, vacated and remanded on other grounds (1978), 438 U.S. 586, 57 L.Ed.2d 973. The prosecutor's statements in the case at bar fall within the ambit of commenting on the State's case being unrefuted and uncontradicted. Viewing the prosecutor's closing argument in its entirety, we find that Jalowiec was not materially prejudiced. See State v. Hill (1996), 75 Ohio St.3d 195, 204. Jalowiec's fifth assignment of error is overruled.
 C. Guilt Phase Jury Instructions Seventh Assignment of Error Where the court provides the jury with inaccurate trial phaseinstructions, a defendant is deprived his protections underthe Fifth, Sixth, Eighth and Fourteenth Amendments to theUnited States Constitution.
Jalowiec next argues in his seventh assignment of error that "the trial court made numerous errors in its instructions to the jury." However, he refers us only to the court's instruction on causation. The pertinent instructions were given as follows:
 "Cause" is an essential element of the offense charged in Count One.
 "Cause" is an act, or a failure to act, which in the natural and continuous sequence directly produces the death, and without which it would not have occurred.
 "Cause" occurs when the death is the natural and foreseeable result of the act, or the failure to act.
 The Defendant's responsibility is not limited to the immediate or most obvious result of the Defendant's act, or failure to act.
 The Defendant is also responsible for the natural and foreseeable consequences or results that follow, in the ordinary course of events, from the act or failure to act.
 There may be more than one cause for an event. However, if a Defendant's act or failure to act was one cause, the existence of other causes is not a defense.
Jalowiec contends that the fourth and fifth paragraphs of the above quoted instructions are erroneous under State v. Jacks
(1989), 63 Ohio App.3d 200, 204-05.
Jalowiec did not object to these instructions, as required by Crim.R. 30(A). Therefore, we can only take notice of the error if it rises to the level of plain error. Furthermore, "[a] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." State v.Price (1979), 60 Ohio St.2d 136, paragraph four of the syllabus.
The trial court did not err in the case at bar. First, the instructions are not identical to those in Jacks. Second, when the particular instructions at issue are used, reversal is not required "where the instructions as a whole make clear that the jury must find purpose to kill in order to convict." State v.Phillips, 74 Ohio St.3d at 100. Taking the instructions as a whole, we find that the jury was clearly instructed that it was required to find purpose to kill in order to convict Jalowiec. Jalowiec's seventh assignment of error is overruled.
 V. Penalty Phase Issues A. Prosecutorial Misconduct in Penalty Phase Sixth Assignment of Error The trial court erred by allowing the state to adduceevidence of non-statutory aggravating factors during thesentencing phase of trial.
Jalowiec next assigns as error testimony adduced by the prosecution at the penalty phase of Jalowiec's trial. Under R.C.2929.04(A), the death penalty may be imposed only if one or more of eight statutory aggravating factors is proven beyond a reasonable doubt. In the guilt phase of Jalowiec's trial, the jury found that Jalowiec killed Lally to prevent him from testifying in a criminal proceeding, meeting the aggravating circumstance in R.C. 2929.04(A)(8).[4] During the penalty phase of the trial, Jalowiec made an unsworn statement and called several witnesses on his behalf. Jalowiec and the other witnesses testified that Jalowiec suffered from rheumatoid arthritis; that he was unable to maintain jobs because of his arthritic condition; that he was kind and gentle with children; that he never used crack cocaine; and that Jalowiec did not kill Lally.
The prosecution presented seven rebuttal witnesses. Three of these witnesses testified that Jalowiec had been arrested for selling crack cocaine and for possessing a pipe used for smoking crack cocaine. Three other witnesses testified that Jalowiec had beaten and kicked two men during an altercation outside a bar. Jalowiec argues that the trial court improperly allowed these witnesses to testify as to these alleged "other acts" by Jalowiec.
"Subject to applicable Rules of Evidence, * * * counsel for the state at the penalty stage of a capital trial may introduce * * * evidence rebutting the existence of any statutorily defined or other mitigating factors first asserted by the defendant * * *."State v. Gumm (1995), 73 Ohio St.3d 413, syllabus. Evid.R. 404(A) governs the introduction of evidence of a criminal defendant's character traits:
 (A) Character Evidence Generally.
Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 (1) Character of Accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible[.]
The admission or exclusion of evidence is reviewed under an abuse of discretion standard. State v. Dunlap (1995), 73 Ohio St.3d 308,316.
We find no error in the admission of the testimony of the prosecution's rebuttal witnesses. In his unsworn statement, Jalowiec put into issue that he was peaceable, that his arthritis was crippling, and that he did not use crack cocaine. The prosecution was permitted to rebut each of these contentions under Evid.R. 404(A). Jalowiec asserts that the introduction of the rebuttal testimony was tantamount to introducing non-statutory aggravating factors into evidence. However, this is clearly not the case. The trial court did not err by allowing the prosecution to adduce rebuttal testimony. Jalowiec's sixth assignment of error is overruled.
 Ninth Assignment of Error Prosecutorial misconduct deprived the appellant a [sic] fairpenalty determination phase of his capital trial.
Jalowiec argues in his ninth assignment of error that, in the prosecution's closing argument, the prosecutor improperly referred to non-statutory aggravating factors. At various times during the prosecution's closing argument of the penalty phase, the transcript shows that reference was made to "aggravating circumstances."[5] Jalowiec asserts that the prosecutor's use of that phrase was prejudicial, because it allowed the prosecution to argue that aggravating circumstances not delineated in R.C.2929.04(A) were to be considered by the jury.
We note that Jalowiec did not object to any of the instances of which he complains. Therefore, we will take notice of plain error only.
Jalowiec's argument is not well-taken. A prosecutor may not argue in the penalty phase of a capital trial that the nature and circumstances of a crime are "aggravating circumstances." Statev. Wogenstahl (1996), 75 Ohio St.3d 344, paragraph two of the syllabus. However, taking the comments in context, the prosecutor clearly referred only to the single statutory aggravating circumstance found in this case: that Lally was killed to prevent him from testifying in a criminal case. Furthermore, the trial court correctly instructed the jury that only one statutory aggravating circumstance was present. See State v. Hill,75 Ohio St. 3d at 202. No error prejudicial to Jalowiec occurred. Jalowiec's ninth assignment of error is overruled.
 B. Penalty Phase Jury Instructions
In two of his assignments of error, Jalowiec takes issue with the trial court's instructions to the jury during the penalty phase of the trial. Because Jalowiec did not object to any of the allegedly erroneous instructions at trial, he has waived all but plain error. Crim.R. 30(A); State v. Underwood (1983), 3 Ohio St.3d 12, syllabus. We review the errors assigned accordingly.
 Tenth Assignment of Error The trial court's erroneous penalty phase instructionsdeprived the appellant of a fair and reliable determinationof his sentence in violation of the Fifth, Sixth, Eighth andFourteenth Amendments of the United States Constitution andArticle I, sections 9, 10 and 16 of the Ohio Constitution.
Jalowiec asserts in his tenth assignment of error that five different portions of the trial court's instructions to the jury in the penalty phase of the trial were erroneous. Jalowiec first argues that the trial court erred by not defining the term "mitigation." However, Jalowiec did not request that an instruction defining mitigation be given to the jury. The trial court's instructions on the definition of "mitigating factors" were sufficient and in accord with R.C. 2929.04(B). We find no error.
Jalowiec next argues that the trial court erred by stating all seven statutory mitigating factors listed in R.C. 2929.04(B). Jalowiec argues that evidence was only presented relative to the seventh, "catch-all" factor, "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death." R.C. 2929.04(B)(7). Because no evidence was presented on the other six factors,[6] Jalowiec asserts that the instructions were prejudicial under State v. DePew (1988),38 Ohio St.3d 275, 289-90.
We first note that Jalowiec did in fact present evidence on other mitigating factors. In closing arguments, Jalowiec's counsel made specific mention of Jalowiec's youth (he was twenty-three at the time of Lally's murder), and counsel also argued to the jury that Jalowiec was under duress when he acted, that Jalowiec lacked a significant prior criminal history, that Jalowiec was not the principal offender, and that the jury should consider Jalowiec as not having a great degree of participation in the offense or in the act that led to Lally's death. Jalowiec's counsel further argued:
 [W]e have six mitigating factors that you must consider by law, so we have the six against one [aggravating circumstance] that have to be considered on behalf of Stan and I am asking you to consider those because you are supposed to and I am asking you, after considering them, and I believe they outweigh — in other words, these six mitigating factors outweigh the aggravating factors * * *.
Thus, only two mitigating factors were not supported by evidence.
We find no error in the trial court's instruction. As inDePew, 38 Ohio St.3d at 289-90, the trial court did not comment on those factors that Jalowiec's counsel did not discuss in closing argument. Furthermore, the inclusion of all statutory mitigating factors does not require reversal. Id.; State v. Keith
(1997), 79 Ohio St.3d 514, 533. Jalowiec's argument is without merit.
Third, Jalowiec contends that the trial court erred by instructing the jury that it could not consider sympathy. We find no error in this instruction. See State v. Combs (1991), 62 Ohio St.3d 278,288-89.
Jalowiec's fourth argument is that the trial court improperly gave the jury an "acquittal first" instruction. The trial court instructed the jury as follows;
 You should recommend the sentence of death if you unanimously, that is, all twelve of you, find by proof beyond a reasonable doubt, that the aggravating circumstances outweigh the mitigating factors.
 If you do not so find, you shall unanimously (all twelve) recommend either a life sentence with parole eligibility after serving twenty years of imprisonment, or a life sentence with parole elligibility [sic] after serving thirty years of imprisonment.
Jalowiec argues that this instruction violates State v. Thomas
(1988), 40 Ohio St.3d 213, 219-20. We disagree. The trial court's instruction was not improper. See State v. Taylor,78 Ohio St. 3d at 28-29.
Jalowiec's final contention is that the trial court erred by continuously referring to "aggravated circumstances" when only one statutory aggravated circumstance was present. At times, the plural "circumstances" does appear in the jury charge. However, the trial court clearly delineated that there was only one aggravating circumstance when the court instructed the jury: "The aggravating circumstances which you have already found are the following: (1) That the victim was killed to prevent his testimony in a criminal proceeding." Jalowiec has not overcome the presumption that a jury follows the instructions given to it.
We find no error in the trial court's penalty phase instructions. Jalowiec's tenth assignment of error is overruled.
 Twelfth Assignment of Error The argument to the jury that their decision is a mererecommendation is unacceptable as it diminishes theresponsibility of the jury.
In his twelfth assignment of error, Jalowiec contends that the trial court erred by referring to the jury's decision in the penalty phase of the trial as a "recommendation" during voir dire of the potential jurors, the guilt phase of the trial, the penalty phase, and in the court's instructions to the jury during the penalty phase.[7] We disagree. "[T]he term `recommendation' accurately reflects Ohio law and does not diminish the jury's sense of responsibility. There is no error, plain or otherwise."State v. Moore (1998), 81 Ohio St.3d 22, 37. (Citation omitted.) Jalowiec's twelfth assignment of error is overruled.
 VI. Ineffective Assistance of Trial Counsel Eleventh Assignment of Error The failure of trial counsel to make proper objections,constitutes ineffective assistance of counsel.
The standard under which an attorney's performance will be adjudged deficient was set forth in State v. Bradley (1989),42 Ohio St.3d 136, paragraphs two and three of the syllabus:
 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.
 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v.Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Hamblin
(1988), 37 Ohio St.3d 153, 155-56.
Jalowiec argues that he was deprived of a fair trial by virtue of ineffective assistance of trial counsel. He argues that his trial attorneys were ineffective in six respects. He first argues that trial counsel was ineffective for failing to object to the dismissal of potential jurors Porter and Eubanks, and for failing to object to potential juror Kulcsar being retained on the jury panel. In our analysis of Jalowiec's first assignment of error, we determined that the trial court did not err by excluding potential jurors Porter and Eubanks; therefore, Jalowiec was not prejudiced by his attorneys' failure to object. With regard to potential juror Kulcsar, Jalowiec's trial counsel did object to Kulcsar being retained on the panel. Counsel's performance was not deficient in this respect.
Jalowiec next asserts that four instances of ineffective assistance of counsel occurred when his trial attorneys failed to object to or offer penalty phase jury instructions, as discussed in our analysis of Jalowiec's tenth assignment of error. He cites four specific instances. The first instance is counsel's failure to request a jury instruction defining "mitigation." However, Jalowiec has failed to demonstrate that but for this error, the result of the penalty phase would have been different. Jalowiec has not shown ineffective assistance of counsel on this issue.
Jalowiec's second, third, and fourth alleged instances of ineffective assistance with regard to penalty phase jury instructions are counsel's failure to object to the instruction listing all of the statutory mitigating factors, failure to object to the "no sympathy" instruction, and failure to object to the "acquittal first" instruction. With respect to each of these objections, we held above that the trial court did not err in giving these instructions; objections on the part of Jalowiec's trial counsel would not have changed the outcome. Jalowiec's trial attorneys were not deficient for failing to object to these instructions.
Jalowiec's final assertion is that trial counsel should have objected to the pervasive use of the term "recommendation" by the trial court and the prosecutor in describing the jury's decision in the penalty phase. Jalowiec also contends that his attorneys were ineffective for frequently using the term themselves. As we stated above in response to Jalowiec's twelfth assignment of error, the use of the word "recommendation" is not error at all. Jalowiec's trial attorneys were not ineffective for failing to object to, or refrain from using, the word "recommendation."
In sum, Jalowiec was not deprived of effective assistance of counsel. Accordingly, the eleventh assignment of error is overruled.
 VII. Constitutionality of Death Penalty Thirteenth Assignment of Error Imposition of the death sentence violates the Sixth, Eighthand Fourteenth Amendments to the United States Constitutionand Sections 2, 9, 10 and 16, Article I, of the OhioConstitution.
In his final assignment of error, Jalowiec presents thirteen arguments as to why the imposition of the death penalty is unconstitutional. Each of these arguments has previously been rejected. See State v. Reynolds (July 10, 1996), Summit App. No. 16845, unreported, at 14-20, affirmed (1998), 80 Ohio St.3d 670;State v. Dennis (May 8, 1996), Summit App. No. 17156, unreported, at 46-49, affirmed (1997), 79 Ohio St.3d 421; State v. Williams
(Nov. 1, 1995), Summit App. No. 16418, unreported, at 34-38, affirmed (1997), 79 Ohio St.3d 1; State v. Wilson (Oct. 12, 1994), Lorain App. No. 92CA005396, unreported, at 21-27, affirmed (1996),74 Ohio St.3d 381. Jalowiec's thirteenth assignment of error is overruled.
 VIII. Independent Review of Sentence
Pursuant to R.C. 2929.05(A), this court is required to conduct an independent review of Jalowiec's sentence, to determine whether the aggravating circumstance he was found to have committed outweighs the mitigating factors present in the case, and whether the sentence of death is appropriate.
 A. Aggravating Circumstance v. Mitigating Factors
In making a determination that the aggravating circumstance outweighs the mitigating factors, the offender and the offense must be considered. R.C. 2929.05(A). We must also consider the nature and circumstances of the offense; the offender's character, background and history; and the seven statutory mitigating factors listed in R.C. 2929.04(B). The death sentence must be vacated unless we find that the aggravating circumstance outweighs any mitigating factors beyond a reasonable doubt. State v. Slagle
(1992), 65 Ohio St.3d 597, 613.
The applicable aggravating circumstance found by the jury is that Lally was killed to prevent his testimony against Raymond and Danny. This falls under R.C. 2929.04(A)(8).
We find no mitigating value in the nature and circumstances of the offense. Jalowiec participated fully in the murder of Lally. Jalowiec drove the car to the cemetery, as directed by Raymond. When Raymond told Jalowiec and Michael to help him kill Lally, Jalowiec left the car and assisted Raymond in stomping Lally. Jalowiec returned to the car to retrieve something to slash Lally's throat. Jalowiec attempted to help Raymond put the body in the trunk of the car, and once they determined that the body would not fit, Jalowiec attempted to back the car over Lally three times. Lally was then left for dead on one of the coldest nights on record in Cleveland. Jalowiec's full participation in the murder of Lally precludes any mitigating value from being placed on the nature and circumstances of the offense.
We accord some weight to Jalowiec's character, background, and history. Jalowiec was a studious boy who developed rheumatoid arthritis by the time he entered the sixth grade. He attempted to find work, but the arthritis made work difficult. Jalowiec's family was loving and supportive of him. Jalowiec also was kind in his relationships with his family. A former girlfriend of Jalowiec testified that he was kind with her children and caring toward her. We also note that this kindness may have led Jalowiec to the point where he is today: when he met Danny Smith, he allowed Danny to stay at his residence. When it became apparent that Danny was involved in illegal activities, Jalowiec did not disassociate himself from Danny.
We find three statutory mitigating factors applicable. Jalowiec was twenty-three at the time of the offense, see R.C.2929.04(B)(4) (youth of offender); however, we give little weight to this factor. Jalowiec also lacks a significant prior criminal record, see R.C. 2929.04(B)(5); we give some weight to this factor. With respect to R.C. 2929.04(B)(7), other relevant factors, Jalowiec was under the influence of crack cocaine at the time of Lally's murder. However, we accord this factor no weight. The evidence does not support a finding that any of the other statutory factors apply.
We accord some weight to the mitigating factors, as discussed. However, we find that the aggravating circumstance outweighs these mitigating factors beyond a reasonable doubt.
 B. Appropriateness of Sentence
In determining the appropriateness of Jalowiec's sentence, our analysis is twofold. First, we must determine whether the evidence supports the aggravating circumstance being found beyond a reasonable doubt. Second, we must determine whether Jalowiec's sentence is excessive or disproportionate in relation to the seventeen other cases in which this court has affirmed the death penalty.[8]
The evidence showed that Lally was to be a witness in the criminal proceedings against Raymond and Danny Smith, and that Lally was killed to prevent him from testifying in those proceedings. It is irrelevant that Lally was not going to testify against Jalowiec in a criminal proceeding. We find the aggravating circumstance found in R.C. 2929.04(A)(8), that the victim was killed to prevent his testimony in a criminal proceeding, was proven beyond a reasonable doubt.
We also find that the death sentence in the case at bar is proportionate to cases previously decided by this court. This court has previously affirmed the imposition of the death penalty where the victim was murdered to prevent the victim from testifying in a criminal proceeding. See State v. Smith and Statev. Filiaggi, supra, footnote 8. Jalowiec's sentence of death is not disproportionate to other cases decided by this court.
 CONCLUSION
All of Jalowiec's assignments of error are overruled. In conducting our independent review, this court concludes that the aggravating circumstance was proven beyond a reasonable doubt, that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt, and that the sentence of death is not inappropriate or disproportionate. Jalowiec's conviction and sentence of death are affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Lorain Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ JOHN W. REECE
FOR THE COURT
SLABY, P. J.
DICKINSON, J. CONCUR.
[1] The record is unclear as to whether there were to be separate trials, or whether Raymond and Danny were to be tried together.
[2] The following exchange occurred between the prosecutor and Porter after counsel for Jalowiec rehabilitated Porter:
 MR. ROSENBAUM [the prosecutor]: Do you see this fellow [Jalowiec] at the end of the table here? (Indicating)
THE JUROR [Porter]: Yes, I see him.
MR. ROSENBAUM: Look at him.
 Could you sign your name to a piece of paper condemning him to death if you thought the law and the evidence required it?
 MR. GRUNDA [co-counsel for Jalowiec]: I would object to that question.
THE COURT: Overruled.
 MR. ROSENBAUM: Look at him. That is what you are going to have to do, that is what we are talking about.
 Could you do that if the law and the evidence required it?
THE JUROR: If the law and the evidence required it.
 MR. ROSENBAUM: Or are your personal feelings so strong that you can't?
THE JUROR: Yes, my personal feelings are strong.
 MR. ROSENBAUM: So, you could not sign your name to a piece of paper condemning him to death?
 THE JUROR: No, I could not sign my name to anything that would say that he would have to have death.
 MR. ROSENBAUM: So, you cannot vote for the death penalty?
THE JUROR: No, I could not.
THE COURT: Thank you, Ma'am, you are excused.
[3] The most notable exchange occurred as follows:
 MR. CLEARY [co-counsel for Jalowiec]: Now, you also say in here [the prospective juror questionnaire] when asked what your views are concerning the death penalty, when there is an eyewitness to a murder, execute the person two days after the murder like they do in China.
THE JUROR [Kulcsar]: Right. I believe in that.
MR. CLEARY: Is there something lacking like a trial?
 Do you believe that perhaps they should try the guy before they execute him two days later?
 THE JUROR: If there is an eyewitness, if somebody saw them shoot that person, I think that they should be, eye for eye, tooth for tooth.
 MR. CLEARY: And we should do away with some of the procedural rights and stuff?
THE JUROR: Right.
[4] R.C. 2929.04(A)(8) permits the imposition of the death penalty if it is proven beyond a reasonable doubt that
 [t]he victim of the aggravated murder was a witness to an offense who was purposely killed to prevent his testimony in any criminal proceeding and the aggravated murder was not committed during the commission, attempted commission, or flight immediately after the commission or attempted commission of the offense to which the victim was a witness * * *.
[5] The State argues that the references to "aggravating circumstances" resulted from a glitch in the court reporter's transcription equipment, and that each reference should read "circumstance." The steps necessary to correct the record were not taken, and we cannot consider the State's argument. However, the various references to "aggravating circumstances" in the record lend credence to the State's argument, because in these instances the rest of the sentence indicates that "circumstance" probably was meant.
[6] The six other statutory mitigation factors of R.C.2929.04(B) are:
 (1) Whether the victim of the offense induced or facilitated it;
 (2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;
 (3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;
(4) The youth of the offender;
 (5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications; [and]
 (6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim[.]
[7] In its instructions to the jury, the trial court told the jury:
 * * * It is going to be your responsibility at this point to decide which sentence to recommend to the Court regarding the alternative charges of Aggravated Murder with the specification.
 I have used the word recommend many times and the attorneys have used it, and I want to make sure that you understand that you are not to construe that word to diminish your responsibility in this matter. It is an awesome task, and the fact thadt [sic] the word recommend is used should not be considered by you to lessen your task.
Additional reference to a recommendation was made in the instructions found in our previous discussion of the "acquittal first" argument in Jalowiec's tenth assignment of error.
[8] State v. Smith (Mar. 25, 1998), Lorain App. No. 96CA006331, unreported; State v. Filiaggi (Dec. 10, 1997), Lorain App. No. 95CA006240, unreported; State v. McNeill (Apr. 1, 1997), Lorain App. No. 95CA006158, unreported; State v.Reynolds (July 10, 1996), Summit App. No. 16845, unreported, affirmed (1998), 80 Ohio St.3d 670; State v. Dennis (May 8, 1996), Summit App. No. 17156, unreported, affirmed (1997),79 Ohio St.3d 421; State v. Williams (Nov. 1, 1995), Summit App. No. 16418, unreported, affirmed (1997) 79 Ohio St.3d 1, certiorari denied (1998), 522 U.S. ___, 139 L.Ed.2d 646;State v. Wilson (Oct. 12, 1994), Lorain App. No. 92CA005396, unreported, affirmed (1996), 74 Ohio St.3d 381, certiorari denied (1996), 519 U.S. ___, 136 L.Ed.2d 78; State v.Phillips (Aug. 31, 1994), Summit App. No. 16487, unreported, affirmed (1995), 74 Ohio St.3d 72, certiorari denied (1996), 517 U.S. ___, 134 L.Ed.2d 938; State v. Brooks (July 13, 1994), Summit App. No. 16192, unreported, affirmed in part and reversed in part (1996), 75 Ohio St.3d 148; State v. Simko
(Jan. 20, 1993), Lorain App. No. 91CA005214, unreported, affirmed (1994), 71 Ohio St.3d 483, certiorari denied (1995),516 U.S. 831, 133 L.Ed.2d 57; State v. Johnson (Nov. 4, 1992), Summit App. No. 15065, unreported, reversed (1994), 71 Ohio St.3d 332, certiorari denied, (1995) 515 U.S. 1164,132 L.Ed.2d 864; State v. Davis (Apr. 18, 1990), Lorain App. No. 88CA004390, unreported, affirmed (1991), 62 Ohio St.3d 326, certiorari dismissed (1992), 506 U.S. 803, 121 L.Ed.2d 6;State v. Huertas (July 6, 1988), Lorain App. No. 4202, unreported, affirmed in part and reversed in part (1990),51 Ohio St.3d 22, certiorari dismissed (1991), 498 U.S. 336,112 L.Ed.2d 837; State v. Cooey (Dec. 23, 1987), Summit App. No. 12943, unreported, affirmed (1989), 46 Ohio St.3d 20, certiorari denied (1991), 499 U.S. 954, 113 L.Ed.2d 482;State v. Benner (July 22, 1987), Summit App. No. 12664, unreported, affirmed (1988), 40 Ohio St.3d 301, certiorari denied (1990), 494 U.S. 1090, 108 L.Ed.2d 962; State v. Greer
(Mar. 4, 1987), Summit App. No. 12258, unreported, affirmed (1988), 39 Ohio St.3d 236, certiorari denied (1989),490 U.S. 1028, 104 L.Ed.2d 201-02; State v. Post (Jan. 15, 1986), Lorain App. No. 3868, unreported, affirmed (1987), 32 Ohio St.3d 380, certiorari denied (1988), 484 U.S. 1079,98 L.Ed.2d 1023.